**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| SCOTT FOSTER, an individual, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | **Case No:** |
| v. ) | |
| ) | |
| INKAHOLIK TATTOOS, INC., ) | |
| a Florida corporation, ) | |
| ) | |
| *Defendant*. ) | |

**COMPLAINT FOR STATUTORY DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)**

1. This action arises from Defendant's willful and knowing violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), which prohibits the use of an automatic telephone dialing system to send text messages to cell phones and other mobile services subject to two exceptions: (1) calls made for emergency purposes; and (2) calls made with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

2. Defendant, in an effort to drum up business for its tattoo and body piercing parlors, sent Plaintiff multiple unsolicited telemarketing text messages, using automatic telephone dialing equipment within the meaning of the TCPA, despite the fact he requested not to be called on his telephone number on several occasions.

3. It is well understood that "the right to be let alone" is one of the most valued rights in a civilized society. *See Olmstead v. United States*, 277 U.S. 438 (1928).

4. Accordingly, Plaintiff, alleges as follows upon personal knowledge as to himself, his own acts and experiences, and, as to all other matters, upon information and belief,

including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over the claims in this case under 28 U.S.C § 1331 because this action arises out of a violation of federal law, the Telephone Consumer Protection Act, 47 U.S.C § 227 *et seq*.

6. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

7. Plaintiff, Scott Foster, ("Plaintiff") is a natural person who, at all times relevant to this action, was a resident of North Carolina.

8. Defendant, Inkaholik Tattoos, Inc. ("Defendant"), is a Florida corporation whose principal address is 8367 SW 40th St., Miami, FL 33155 and whose registered agent for service of process is Isabel C. Demelo, 8367 SW 40th St., Miami, FL 33155.

9. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

## AN OVERVIEW OF THE TCPA

10. The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 744, 565 U.S. 368, 181 L. Ed. 2d 881 (2012).

11. The TCPA prohibits calls made to cellular phones through the use of an automatic telephonic dialing system (also known as an "autodialer" or "ATDS") or an artificial or prerecorded voice, unless the call was made for emergency purposes or with the "[p]rior express consent of the called party." 47 U.S.C § 227(b).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2013).

13. To demonstrate a violation of the TCPA, the Plaintiffs need only show that Defendant called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. *Breslow v. Wells Fargo Bank, NA*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).

14. In 2012, the FCC issued an order tightening the restrictions for automated *telemarketing* calls, requiring "prior express *written* consent" for such calls to wireless

numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added).

15. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent.... and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

17. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012)).

18. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan,* 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at \*49).

19. No person or entity shall initiate any call for telemarketing purposes to a residential or wireless telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. §§ 64.1200(d)-(e).

20. The rules set forth in paragraph (d) and (e) of § 64.1200 are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, ¶ 136 (2003).

23. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

24. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

25. The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each violation. 47 U.S.C. § 227(b). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id.* at 1318. *See also Mims*, 132 S. Ct. at 746.

**FACTUAL ALLEGATIONS**

26. Defendant claims to be Miami's best tattoo, piercing & body art studios. http://www.inkaholiktattoos.com/.

27. Upon information and belief, in order to drum up new business, Defendant partnered with the mobile marketing firm, Mobile Text Alerts, LLC ("Mobile Text"), to promote Defendant's tattoo parlors.

28. As a result thereof, from May 13, 2017 to the present, Defendant, using Mobile Text's automated mass text-messaging platform, caused thirty-one (31) unsolicited and unlawful text messages to be transmitted to Plaintiff's cellular telephone from the long code "48507276".

29. At all times relevant herein, Plaintiff is the subscriber and sole user of the AT&T monthly prepaid plan for the telephone number ***-***-1838.

30. At all times relevant herein, Plaintiff exercised sole dominion and control over the cellular telephone to which Defendant was texting.

31. The text messages contained advertisements for specials on Defendant's tattoo and piercing services; some of which either urge the consumer to follow Defendant's employee or agent on Instagram, ask the consumer to contact the Defendant via phone number, or to visit the Defendant's physical locations.

32. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, *i.e.*, Defendant's tattoo or piercing services.

33. Plaintiff has never conducted business with Defendant, and at no point in time did Plaintiff provide Defendant with his express written consent to the receipt of the subject text messages.

34. Even if Plaintiff, at some point, unwittingly provided Defendant with express written consent, which he did not, Plaintiff on at least four (4) separate occasions expressly demanded that Defendant cease sending text messages to his cellphone.

35. The fact that Plaintiff demanded that Defendant cease sending him text messages, yet the messages did not stop, is evidence sufficient to indicate that Defendant failed to institute procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

36. Plaintiff's cellular telephone number should have been placed on an internal do-not-call list, but it was not.

37. The impersonal and generic nature of Defendant's text messages, and the fact the subject text messages originated from mobile-text-alerts.com, demonstrates that Defendant

utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.,* 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS).

38. Defendant's unsolicited text messages caused Plaintiff actual and tangible harm, including invasion of his privacy, the tying up of his phone line, depletion of battery life leading to less availability of his telephone line in the case of an emergency, aggravation at receiving so many unsolicited messages so frequently, annoyance, intrusion on seclusion, trespass, and conversion. Plaintiff suffered loss of time as a result of opening and seeing the text messages, attempting to determine if there is a way to opt-out from the text messages, and answering back in attempts to have the mass messaging cease. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received many of Defendant's text messages while working, or engaged in important activity. He was disrupted by the call and had to stop what he was doing to read the messages on his phone and attempt to stop it.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)

39. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

40. It is a violation of the 47 U.S.C. § 227(b)(1)(A)(iii) to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

41. Defendant's violation of the 47 U.S.C. § 227(b)(1)(A)(iii) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device.

42. Defendant is directly and/or vicariously liable for the violations above.

43. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(b)(3). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff, Scott Foster, respectfully requests the following relief:

a. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(b)(1)(A)(iii);

b. An award of statutory damages in the maximum amount allowed by law,

c. An injunction requiring Defendant to cease all communications in violation of the TCPA; and

d. Such further and other relief the Court deems reasonable and just.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

45. It is a violation of 47 C.F.R. § 64.1200(d) to initiate any call for telemarketing purposes to a residential [or cellular[1]] telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

46. Defendant's violation of 47 C.F.R. § 64.1200(d) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device.

47. Defendant is directly and/or vicariously liable for the violations above.

48. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(c)(5). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff, Scott Foster, respectfully requests the following relief:

e. A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(d)(2);

f. An injunction prohibiting Defendant from calling or texting Plaintiff;

g. An award of statutory damages in the maximum amount allowed by law, and;

h. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

49. Plaintiff demands a trial by jury

Date: August 8, 2018                          Respectfully submitted,

                                              */s/ Scott D. Owens*

---

[1] *See* 47 C.F.R. § 64.1200(e).

                                        Scott D. Owens, Esq.
                                        SCOTT D. OWENS, P.A.
                                        3800 S. Ocean Dr., Ste. 235
                                        Hollywood, FL 33019
                                        Tel: 954-589-0588
                                        Fax: 954-337-0666
                                        scott@scottdowens.com